UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| GREG WILSON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:18-CV-014-CHB |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| CPB FOODS, LLC, | ) | **ORDER COMPELLING** |
| | ) | **ARBITRATION** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

When Plaintiff Greg Wilson ("Wilson") began working as a general manager at a restaurant owned by Defendant CPB Foods, LLC ("CPB"), he was provided with numerous policies to review that comprised the CPB Foods Handbook (the "Handbook"). One of these policies was an agreement to arbitrate ("Arbitration Agreement") any claims or disputes against CPB that arose from his employment. Despite acknowledging receipt of this Arbitration Agreement, however, Wilson filed suit in federal court alleging violations of the Americans with Disabilities Act, as amended ("ADA") 42 U.S.C. §§ 12101, *et seq.* Wilson does not dispute that he was provided a copy of this Arbitration Agreement, nor does he dispute that he signed a receipt acknowledging that he had been provided a copy of this agreement and that he had read and understood its terms. He argues, however, that this agreement should not be enforced against him since this lawsuit falls outside of the scope of the Arbitration Agreement at issue, or, in the alternative, because CPB has waived its reliance on this agreement. Because the Court finds that this action fits squarely within the scope of the Arbitration Agreement, and that CPB has not waived its right to enforcement, the Court will grant CPB's Motion to Stay Litigation and Compel Arbitration ("Motion to Compel"). [R. 13]

I.  **Background**

CPB owns two Golden Corral restaurants in Louisville, Kentucky. [R. 1, at ¶ 4, R. 6, at ¶ 5]. Plaintiff Greg Wilson was a general manager of one of these stores. [R. 1, at ¶ 5]  When he was hired in April 2015, CPB provided Wilson with a copy of the Arbitration Agreement, which provides, in relevant part, that if Wilson is

> unable to resolve any such complaints or disputes to [his] satisfaction internally, **the resolution of all disputes that arise between [Wilson] and CPB Foods will be through formal, mandatory arbitration before a neutral arbitrator.**
>
> Because of, among other things, the delay and expense which result from the use of the court systems, any legal or equitable claims or disputes arising out of or in connection with your employment, the terms and conditions of your employment, or termination of employment with CPB Foods will be resolved by binding arbitration instead of a court of law or equity. This applies to all disputes involving legally protected rights (e.g., local, state and federal statutory, contractual or common law rights) regardless of when the statute was enacted or the common law doctrine was recognized (e.g., either before or after this arbitration agreement and policy became effective). **This agreement does not limit your ability to pursue any external administrative remedy (such as with the EEOC).**
>
> This policy substitutes one legitimate dispute resolution form (arbitration) for another (litigation), thereby waiving any right of either party to have a dispute resolved in court. This substitution involves no surrender, by either party, of any substantive statutory or common law benefits, protection or defense for individual claims. **You do, however, waive the right to commence or be a party to any representative, collective or class action.**

[R. 13-7, Ex. 6 (emphasis in original)]  Wilson electronically signed the Handbook Acknowledgement Form[1], indicating he had read, understood, and agreed to follow all policies that were provided to him when he was hired, including the Arbitration Agreement. [R. 13-5, Ex. 5]

---

[1] At the top of this Handbook Receipt Form the date reads "May 2015."  However, Wilson's electronic signature indicates he signed on October 3, 2016.  Neither party contest in any meaningful way that Wilson signed the Handbook, however.  This discrepancy in dates does not create a factual issue that the Court must therefore resolve.

While he was a manager, Wilson suffered from a series of Transient Ischemic Attacks ("TIAs") that Wilson alleges were brought on as a result of a severe anxiety disorder. [R. 1, at ¶¶ 5-9] Wilson claims that CPB regarded him as having a disability in violation of the ADA as a result of this anxiety disorder. In his Complaint, Wilson alleges that his demotion and termination were a result of this severe anxiety disorder, and therefore qualify as adverse employment actions under the ADA. *Id.* at ¶¶ 14-26.

The parties attempted to resolve this matter prior to Wilson filing suit but were unsuccessful. *See* [R. 14, at p. 2] Wilson filed a charge with the EEOC on April 28, 2017. *Id.* On July 20, 2017, the EEOC requested that the parties engage in mediation. Wilson alleges that CPB failed to respond to this request. *Id.* On December 27, 2017, the EEOC issued Wilson a Notice of Right to Sue ("Right to Sue Letter"), and Wilson filed suit in this Court on January 8, 2018, alleging discriminatory demotion and discharge in violation of the ADA. [R. 1]

In its Answer to Wilson's Complaint, CPB asserted various affirmative defenses. [R. 6] It also preserved other affirmative defenses contained in the Federal Rules of Civil Procedure and reserved the right to add additional affirmative defenses. *Id.* at ¶¶ 39, 40. The parties conducted the required Rule 26 Conference pursuant to Fed. R. Civ. P. 26(f) and submitted a report from this planning meeting. Fed. R. Civ. P. 26; [R. 9]. Thereafter, Wilson submitted his initial disclosures, and the Court issued a Scheduling Order. [R. 11] The parties engaged in a period of discovery, and Wilson's deposition was scheduled. CPB cancelled this deposition shortly before it was scheduled to take place, however, citing the parties' Arbitration Agreement (which CPB turned over in the course of discovery). Wilson argues that this was the first time CPB ever produced the Arbitration Agreement, and the first time that Wilson was able to see a copy. [R. 14, at p. 4] CPB provided no justification for why it failed to raise this Arbitration

Agreement at the onset of litigation. Instead, CPB filed this Motion to Stay Litigation and Compel Arbitration. [R. 13]

## II. Analysis

### A. Arbitration Standard

In this Circuit, "[i]n order to show that the validity of the agreement is 'in issue,' the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate," a showing that mirrors the summary judgment standard. *Great Earth Cos. v. Simons,* 288 F.3d 878, 889 (6th Cir. 2002). Therefore, district courts in Kentucky evaluate a motion to compel arbitration as one for summary judgment under Fed. R. Civ. P. 56(c). *See Freeman v. Easy Mobile Labs, Inc.*, No. 1:16-CV-00018-GNS, 2016 WL 4479545, at *1 (W.D. Ky. Aug. 24, 2016) (citing *Arnold v. Rent-a-Center, Inc.*, No. 11-18-JBC, 2011 WL 1810145, at *2 (E.D. Ky. May 12, 2011) ("This court will treat the motion to compel arbitration as one for summary judgment…"); *Weddle Enters., Inc. v. Treviicos-Soletanche, J.V.*, No. 1:14CV-00061-JHM, 2014 WL 5242904, at *2 (W.D. Ky. Oct. 15, 2014) ("A motion to dismiss based on the existence of a valid arbitration agreement is not evaluated under the usual Fed. R. Civ. P. 12(b)(6) standard. Instead, courts apply the standard applicable to motions for summary judgment.") (internal citation omitted) (citation omitted). "In order to show that the validity of the agreement is in issue, the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate." *Great Earth Cos.*, 288 F.3d at 889 (internal quotation marks omitted) (citation omitted).

### B. FAA Overview

The Federal Arbitration Act ("FAA") was enacted "to ensure judicial enforcement of privately made agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219

(1985). The statute "embodies [a] national policy favoring arbitration . . ." *Richmond Health Facilities v. Nichols*, 811 F.3d 192, 195 (6th. Cir. 2016) (citing *Seawright v. Am. Gen. Fin. Servs., Inc.,* 507 F.3d 967, 972 (6th Cir. 2007)). The FAA applies to written agreements to arbitrate disputes that arise out of contracts involving transactions in interstate commerce.[2] Under its terms, such agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that a district court *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Byrd*, 470 U.S. at 218 (emphasis in original).

When a party invokes the FAA and asks a federal court to dismiss or stay a case and compel arbitration, the Court must determine whether the parties agreed to arbitrate the dispute at issue. *Stout v. J.D. Byrider,* 228 F.3d 709, 714 (6th Cir. 2000). This requires an examination of the contract language in light of the strong federal policy favoring arbitration, resolving any ambiguities in the contract or doubts as to the parties' intentions in favor of arbitration. *Id.* Courts should engage in the following four-step inquiry: (1) determine whether the parties agreed to arbitrate; (2) determine the scope of that agreement; (3) if federal statutory claims are asserted, the Court must consider whether Congress intended those claims to be non-arbitrable; and (4), if the Court concludes that some, but not all, of the claims in the action are subject to

---

[2] The Federal Arbitration Act ("FAA") applies only to "[a] written provision in any maritime transaction or *a contract evidencing a transaction involving commerce.*" 9 U.S.C. § 2 (emphasis added). In *Allied Bruce–Terminix Companies, Inc. v. Dobson,* the United States Supreme Court had occasion to interpret the phrase "evidencing a transaction involving commerce." 513 U.S. 265 (1995). First, the Court concluded that the word "involving" was the "functional equivalent of 'affecting.' " *Id.* at 273–74. Next, the Court adopted a "transaction in fact" interpretation of the phrase "evidencing a transaction." *Id.* at 277-78. The Court 'read[ ] the Act's language as insisting that the 'transaction' in fact 'involv[e]' interstate commerce, even if the parties did not contemplate an interstate commerce connection." *Id.* at 281.

arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration. *Id.*

    **C. Motion to Compel Arbitration**

        **i. Agreement to Arbitrate**

Arbitration agreements are fundamentally contracts. As such, courts must "review the enforceability of an arbitration agreement according to the applicable state law of contract formation." *Seawright*, 507 F .3d at 972; *see also Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630–31 (2009) ("[S]tate law," therefore, is applicable to determine which contracts are binding under § 2 and enforceable under § 3 "if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally.") (quoting *Perry v. Thomas*, 482 U.S. 483, 493, n. 9 (1987)).

The Arbitration Agreement in this case states that if employees at the Golden Corral are unable to resolve complaints or disputes that arise with their employer internally, "the resolution of all disputes that arise . . . will be through formal, mandatory arbitration before a neutral arbitrator." [R. 13-7, Ex. 6] The Arbitration Agreement cites the delay and expense that are usually associated with the use of the court systems as justification for both employees and CPB to use arbitration instead. *Id.* Wilson electronically signed the Handbook Acknowledgement Form, indicating he had read, understood, and agreed to follow all policies, including the Arbitration Agreement. [R. 13-5, Ex. 5]

Still, Wilson alleges he has "no recollection of even seeing this Arbitration Agreement" but "will take [CPB] at its word that this document was electronically presented to him and he consented to it in exchange for employment with CPB [ ]." [R. 14, at p. 6] Thus, Wilson does not dispute that the Arbitration Agreement is valid and that the parties agreed to arbitrate. *Id.*

Because neither party disputes the validity of the Arbitration Agreement, the Court finds that both parties "agreed to arbitrate," and there is no "genuine issue" regarding the validity of the arbitration agreement. Fed. R. Civ. P. 56; *Great Earth Cos.,* 288 F.3d at 889; *Stout*, 228 F.3d at 714.

### ii. Scope of Arbitration Agreement

Wilson contends that his cause of action falls outside the scope of the parties' Arbitration Agreement. [R. 14, at pp. 6-7] Wilson's argument can be summarized as follows: the parties' Arbitration Agreement allows CPB's employees to pursue their administrative remedies (and specifically mentions the EEOC). Wilson pursued his administrative remedies with the EEOC prior to filing suit in federal court. Therefore, once the EEOC process had concluded, and he had been issued a Right to Sue Letter, his lawsuit fell outside of the scope of the parties' Arbitration Agreement. According to Wilson, the EEOC Right to Sue Letter qualifies as "an exception carved out by the very language of the Agreement." *Id.* The Court disagrees. To conclude otherwise would circumvent the plain meaning of the parties' Arbitration Agreement.

In analyzing the scope of the Arbitration Agreement, the Court acknowledges the well-established rule that "doubts regarding arbitrability must be resolved in favor of arbitration." *Fazio v. Lehman Bros.*, 340 F.3d 386 (6th Cir. 2003) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983), *superseded by statute on other grounds*). Bearing this rule in mind, the Court find that the claims at issue here fit squarely within the Arbitration Agreement. Wilson makes claims against CPB for adverse employment actions based upon an alleged disability in violation of the ADA. The clear language of the Arbitration Agreement covers "all disputes that arise between [Wilson] and CPB [ ] . . . . This applies to all disputes involving legally protected rights (e.g., local, state and federal statutory, contractual or

common law rights) regardless of when the statute was enacted, or the common law doctrine was recognized . . . [R. 13-7, Ex. 6] Wilson simply misconstrues the Arbitration Agreement. While the Arbitration Agreement does say that an employee is free to pursue administrative remedies (such as the EEOC), the very next line says "[t]his policy substitutes one legitimate dispute resolution form (arbitration) for another (litigation), thereby waiving any right of either party to have a dispute resolved in court." *Id.* Thus, while the Arbitration Agreement allows an employee to file charges with the EEOC against CPB, it is clear that a party must arbitrate claims instead of filing suit in court. The provision Wilson cites to cannot be read as a "carveout" to the Arbitration Agreement as a whole, allowing employees to file charges in federal court at the conclusion of the administrative process. CPB's reading is correct - the Right to Sue Letter was not an end-run-around the parties' valid Arbitration Agreement. [R. 15, at pp. 2-4] While nothing in the Arbitration Agreement precluded Wilson from pursuing his administrative remedies, the language is clear that once those remedies were exhausted, his sole remedy was arbitration. He could not file an action in state or federal court. The Right to Sue Letter is not a means to circumvent the parties' agreement; it simply represents the end of the administrative process for Wilson. The scope of the agreement covers all the claims at issue.

### iii. Federal Statutory Claims Asserted

The plaintiff's claims are based on violations of the ADA. The Supreme Court has held that federal statutory claims such as the ADA may be subject of arbitration agreements that are enforceable pursuant to the FAA since the agreement "only determines the choice of forum." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 295, n. 10 (2002) ("In these cases we recognized that by agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial,

forum.") (internal citations and quotations omitted). Therefore, the Court finds that Congress did not intend for Wilson's claims arising under ADA to be non-arbitrable.

### iv. All Claims Subject to Arbitration

As explained above, all of Wilson's claims are arbitrable claims. Hence there are no non-arbitrable claims for the Court to consider.

### D. Waiver

Wilson next argues that even if this action falls within the scope of the parties' Arbitration Agreement, CPB waived reliance on the agreement by choosing to participate in this litigation. [R. 14, at pp. 7-10] Wilson argues that he made CPB aware of his intent to proceed with litigation in April 2017, and at no time did the defendant mention its intent to compel arbitration. *Id.* Wilson points out that CPB did not raise the issue of arbitration during the EEOC filing, nor during the brief discovery period after filing this suit. All of this, according to Wilson, amounts to a waiver of CPB's rights to assert arbitration. *Id.* The Court declines to find a waiver on the facts presented here. CPB did not delay long and Wilson cannot point to any actual prejudice he faced during the time when he filed his federal lawsuit.

A party waives arbitration by "engaging in two courses of conduct: (1) taking actions that are completely inconsistent with any reliance on an arbitration agreement; and (2) 'delaying its assertion to such an extent that the opposing party incurs actual prejudice.'" *Hurley v. Deutsche Bank Trust Co.*, 610 F.3d 334, 338 (6th Cir. 2010) (quoting *O.J. Distrib., Inc. v. Hornell Brewing Co.*, 340 F.3d 345, 355 (6th Cir. 2003)). Both elements must be found to establish waiver. *Shy v. Navistar Int'l Corp.*, 781 F.3d 820, 827-28 (6th Cir. 2015). While the Sixth Circuit has declined to sharply define what conduct suffices to establish waiver, it "typically involves a defendant's failure to timely invoke arbitration after being sued or its interference with a plaintiff's pre-

litigation efforts to arbitrate." *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.,* 350 F.3d 568, 574 (6th Cir. 2003). Finally, there is a strong presumption in favor of arbitration that "works against finding waiver in cases other than those with the most compelling fact patterns." *JPD, Inc. v. Chronimed Holdings, Inc.*, 539 F.3d 388, 393 (6th Cir. 2008).

Wilson argues that CPB was on notice that he intended to file a lawsuit against it in April 2017. *See* [R. 14, at p.8] Wilson further argues that CPB never raised the defense of arbitration during this time, even when Wilson began pursuing his administrative remedies with the EEOC. Wilson conflates CPB's silence during this time period with a waiver of its right to enforce arbitration. The agreement did not preclude Wilson from pursuing his *administrative* remedies, and specifically mentions the EEOC as an example of one such avenue for pursuing his substantive rights. *See* [R. 13-7, Ex. 6] The agreement only restricted the parties' choice of forum for enforcing their rights to arbitration rather than federal or state court. *Id.* Moreover, a party does not waive its arbitration claims by refusing to arbitrate prior to the commencement of litigation. *See JPD*, 539 F.3d at 394; *see also Highlands,* 350 F.3d at 574. CPB's silence during the pre-litigation phase of this suit, therefore, could be seen as "the typical posturing that may occur where one party is attempting to 'stare down' the other party in the hope that the other party will simply give up." *Id.* (citations omitted). It is also not convincing that CPB's alleged failure to participate in mediation after Wilson had filed a charge with the EEOC amounted to waiver, since CPB had already mediated once before unsuccessfully. It is equally as plausible that CPB did not respond since it may have perceived a weakness in Wilson's claims, and elected not to participate at that time. *Navistar*, 781 F.3d at 829 (finding no waiver when a party refused to arbitrate, prior to the commencement of litigation, on the grounds that its opponent's claims were substantively weak).

Next, Wilson argues that since this instant suit was filed, CPB has not raised the Arbitration Agreement in a timely manner. [R. 14, at p. 8] A party waives its right to arbitrate only by failing to assert that right in a timely fashion and instead participating in litigation-related activities. *See O.J. Distrib., Inc.*, 340 F.3d at 357 (finding waiver where defendant engaged in negotiations with the plaintiff for approximately 15 months-while at the same time denying the existence of the agreement which contained the arbitration provision-before asserting its right to arbitrate); *General Star National Insurance Co. v. Administratia Asigurarilor de Stat*, 289 F.3d 434, 438 (6th Cir. 2002) (finding waiver where defendant failed to assert right to arbitrate after waiting 17 months before attempting to enforce arbitration clause); *See also Manasher v. NECC Telecom*, 310 F. App'x 804, 806 (6th Cir. 2009) (holding that the defendant had waived its right to arbitrate by engaging in discovery and motion practice for a year before moving to compel arbitration).

Here, Wilson filed the instant action on January 8, 2018. [R. 1] CPB filed its Answer on January 24, 2018. [R. 6] The parties exchanged discovery throughout April 2018. On April 30, 2018, Wilson's counsel requested an extension of time of a month to respond to CPB's discovery requests. [R. 13-1, at p. 2; 13-2, 13-3] CPB served its discovery responses, including a copy of the parties' Arbitration Agreement, on Wilson June 20, 2018. [R. 13-1, at p. 2] However, after making arrangements for the plaintiff's deposition in late July 2017, CPB cancelled, citing for the first time its right to enforce the Arbitration Agreement. [R. 14, at p. 3] A total of five months elapsed since the case had been filed. While the Court agrees that these actions are inconsistent with reliance upon the parties' Arbitration Agreement, the Court does not find enough time passed between these inconsistent actions and when CPB ultimately relied on the Arbitration Agreement to render its reliance on the agreement untimely. The case was still in its

infancy, and only written discovery had been exchanged. It cannot be said that CPB waived reliance on the Arbitration Agreement at this early stage. *But see, e.g., Hurley v. Deutsche Bank Tr. Co. Americas*, 610 F.3d 334, 338–39 (6th Cir. 2010) (finding waiver where two years had passed since plaintiffs initiated the lawsuit and defendants submitted their motion to compel arbitration, defendants had responded to actions taken by plaintiffs but also filed multiple dispositive and non-dispositive motions of their own, including motions to dismiss, motions for summary judgment, and a motion to change venue). Wilson points out that CPB waited until July 2018 to produce the parties' Arbitration Agreement "for the first time." [R. 14, at pp. 3, 4, 8.] However, Wilson does not dispute that he was provided with a copy of this agreement when he was hired, and he does not dispute that he read and understood it. *Id.* at p. 6, *see also* [R. 13-6, Ex. 5]. Since it is unclear whether Wilson actually raises this issue in his response, the Court accepts his statement that he neither disputes being presented with the parties' agreement, nor that he acknowledged reading and understanding it when he was hired. *Id.*

Wilson next argues that there was prejudice because of CPB's delay in relying on the Arbitration Agreement in its Motion to Compel. [R. 14, at p. 3] Without pointing to any specific prejudice, Wilson simply states that "the litigation wheels have been set in motion and there is a litigation schedule already in place." *Id.* His arguments fail. There are many ways to establish prejudice, such as showing that a party waited until a statute of limitations expired to invoke arbitration, *see O.J. Distrib., Inc.*, 340 F.3d at 358, or showing harm to a party due to lengthy delays and costly discovery, *see Johnson Assocs. Corp. v. HL Operating Corp.*, 680 F.3d 713, 720-21 (6th Cir. 2012). Wilson admits that while "this scenario may not be as egregious as that in *Johnson Associates Corp. v. HL Operating Corp.*, 680 F.3d 713, 720 (6th Cir. 2012), Plaintiff still incurs actual prejudice here." *Id.* The Court agrees that this case is distinguishable from

those cases finding prejudice from a delay. However, Wilson has suffered no discernible prejudice in the delay in this case.

For the reasons set forth above, and with the Court being otherwise sufficiently advised, **IT IS HEREBY ORDERED** as follows:

1. Defendant CPB Foods, LLC's Motion to Stay Proceedings and Compel Arbitration [**R. 13**] is **GRANTED**.

2. Plaintiff Greg Wilson **SHALL** prosecute his claims in accordance with the parties' Arbitration Agreement.

3. The matter is **STAYED** pending further proceedings to enforce any award of the arbitrator.

December 11, 2018

*Claria Horn Boom*
Claria Boom, District Judge
United States District Court